## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **Criminal No. 18-cr-229 (CKK/GMH)** |
| ) | |
| **SHIEKH MAHMUD,** ) | |
| ) | |
| **Defendant.** ) | |

## DETENTION MEMORANDUM

This matter comes before the Court upon the application of the United States that Defendant, Shiekh Mahmud, be detained pending trial pursuant to 18 U.S.C. § 3142.  Defendant is charged by indictment with one count of interference with commerce by threats or violence in violation of the Hobbs Act, 18 U.S.C. § 1951.  The Court held a detention hearing on August 2, 2018.  At the conclusion of that hearing and upon consideration of the proffers and arguments of counsel and the entire record herein, the Court ordered Defendant held without bond.  This memorandum is submitted in compliance with the statutory obligation that "the judicial officer shall . . . include written findings of fact and a written statement of the reasons  for the detention." 18 U.S.C. § 3142(i)(1).

## FINDINGS OF FACT

At the detention hearing, the United States proceeded by proffer based on the indictment. Although the defense questioned the accuracy of certain facts in the government's proffer, specifically those related to the verbal demands Defendant allegedly made and whether he had one hand in his pocket during the incident, Defendant offered no contrary evidence on the merits of the offense.  Accordingly, the Court makes the following findings of fact  regarding the government's

allegations.

At approximately 9:48 p.m. on July 26, 2018, Defendant entered a check-cashing establishment in the northwestern quadrant of the District of Columbia.  He placed his backpack in the door, preventing it from closing, and pulled up the hood of his jacket.  He then approached the teller, gave the teller a handwritten note that stated, "Give me 10's and 20's," and said, "I need money.  I'm broke, I need money now."  Defendant further stated that he was committing "a robbery."  The teller feared that Defendant had a gun because he had his hand in his pocket.

The teller pressed the panic button and continued to speak to Defendant until officers from the Metropolitan Police Department arrived.  Footage from law enforcement's body-worn cameras shows that Defendant tore up the note when the police arrived.   The teller positively identified Defendant at the scene of the incident.  Defendant was then arrested.

### B.      Defendant's Criminal History

Defendant pleaded guilty to bank robbery in the District of Columbia in April 2014, and was sentenced to 43 months imprisonment and a three-year term of supervised release, which is set to expire in December 2019.  In connection with that conviction, Defendant admitted to committing three robberies of business establishments (and various other crimes).  In the first, Defendant and his brother entered a market armed with an air pistol, approached and restrained a cashier, and grabbed cash from the register.  In the second, Defendant and his brother entered a credit union and presented a demand note to a teller.  They absconded with $1,400 in U.S. currency. In the third, Defendant and his brother entered a bank, placed a backpack in the door, preventing it from closing, and used a demand note to steal $2,500.  Although the 2014 conviction is his only one as an adult, Defendant has a record of juvenile offenses.

**LEGAL STANDARD**

The Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e). Thus, even if a defendant is not considered a flight risk, his or her danger to the community alone is sufficient reason to order pretrial detention, and vice versa. *United States v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986). Where the judicial officer's justification for detention is premised upon the safety of the community, the decision must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f)(2). Where the justification for detention is risk of flight, the decision must be supported by a preponderance of the evidence. *See United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).

**ANALYSIS**

Pursuant to 18 U.S.C. § 3142(g), the four factors that a court must consider in making a bond determination are: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). Addressing those factors, the Court has determined that Defendant should be detained while awaiting trial because he is a danger to the community.

**A.      Nature and Circumstances of the Charged Offense**

The first factor, the nature and circumstances of the charged offense, favors detention. This

factor asks the Court to consider "the nature and circumstances of the offense charged" as a general matter, but points especially to instances where "the offense is a crime of violence . . . or involves a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). Here, the indictment and the government's proffer establish probable cause to believe Defendant attempted to rob a check-cashing establishment. Even when accomplished without the use of a firearm, Hobbs Act robbery is a crime of violence, *see, e.g.*, *United States v. Kennedy*, 133 F.3d 53, 56 (D.C. Cir. 1998), and carries a maximum term of imprisonment of twenty years, which reflects Congress' judgment about the seriousness of the crime, 18 U.S.C. § 1951(a). Indeed, "[t]he nature of the offense . . . is a danger to community order and safety, with or without a gun," in part because it "creates the anticipation of violence in the robber's victims whether or not the robber is brandishing a weapon or is actually armed." *United States v. Draffin*, No. CR97-583M(JMF), 1997 WL 732426, at *2 (D.D.C. Sept. 5, 1997) (detaining defendant accused of robbing bank using a note stating, "This is a robbery $50 & $100").

## B. The Weight of the Evidence

The weight of the evidence against Defendant is strong and also favors detention. As outlined above, a witness—the teller—observed Defendant approach the window, present a note demanding money, and assert that he needed money and was robbing the establishment. Defendant had not exited the business before law enforcement responded to the teller's activation of the panic button. Indeed, law enforcement observed Defendant speaking to the teller, who positively identified him as the robber. Moreover, body-worn cameras caught Defendant tearing up the note at the arrival of law enforcement, indicating consciousness of guilt.

### C.      The History and Characteristics of Defendant

The history and characteristics of Defendant also favor detention. Section 3142(g)(3) directs the Court to consider: (1) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (2) whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law.  18 U.S.C. § 3142(g)(3)(A)–(B).

In this case, Defendant's prior conviction for bank robbery indicates that he would pose a danger to the community if released.  That is especially true in light of the fact that he has now been charged with an offense arising from conduct very similar to that to which he has admitted. Furthermore, he allegedly committed the current offense while on supervised release for that prior conviction.  The fact that he violated one of the most important conditions of his release—that he should not engage in other criminal activity—indicates that Defendant is unwilling to conform his conduct to the dictates of the law.  The Court is also troubled by his juvenile criminal history.

At the hearing, Defendant presented testimony from a community support worker who has worked with him for over two years.  She detailed the therapeutic and other services that Defendant continues to receive and opined that he was not a danger to the community.  However, that testimony indicated that Defendant is receiving a significant amount of services, yet still engaged in the dangerous conduct at issue here.  For these reasons, Defendant's history and characteristics militate in favor of detention.

### D.      The Danger to the Community

The fourth factor, the danger to the community posed by Defendant were he to be released, also weighs in favor of detention.  The danger to the community posed by his alleged conduct is discussed above and requires no further explanation here.

For these reasons, the Court has little confidence that, if released, Defendant would not continue to engage in criminal activity.  The undersigned therefore finds that there is no condition or combination of conditions that would keep the community safe if Defendant were released.

### CONCLUSION

Based on the consideration of all the evidence, the factors set forth in section 3142(g), and all lesser restrictive alternatives to pretrial detention, the Court finds by clear and convincing evidence that no condition or combination of conditions exist that would reasonably assure the safety of any other person or of the community if Defendant was released.  Therefore, the government's motion for pretrial detention is **GRANTED**.

### DIRECTIONS REGARDING DETENTION

Defendant is **ORDERED** remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  Defendant must be afforded reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility must deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date:  August 3, 2018

_____

G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE