**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| **v.** : | |
| : | **Criminal No. 18-229 (CKK)** |
| **SHIEKH MAHMUD,** : | |
| : | |
| **Defendant.** : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION TO SUPPRESS STATEMENTS**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby files this Responsive Memorandum in Opposition to Defendant Shiekh Mahmud's Motion to Suppress Statements. In support of its response, the United States relies on the following points and authorities and any other such points and authorities as may be raised at any hearing on this matter.

**FACTUAL BACKGROUND**

On July 26, 2018, at approximately 9:48 a.m., the defendant, Shiekh Mahmud, entered the Ace Check Cashing Center located at 3663 Georgia Avenue, N.W., Washington, D.C. During that time period, Defendant Mahmud placed his backpack in the doorway of the establishment and walked up to the teller, Witness #1 (hereinafter "W-1"), while placing the hooded portion of his jacket on his head. The defendant then gave a handwritten note to the teller which stated, "Give me 10's and 20's. The defendant then stated, "I need money; I'm broke, I need money now." The defendant also told the teller that this was robbery. During that time period, W-1 pushed the panic alarm to notify police and continued to talk to the defendant believing the defendant was trying to take money from the check cashing establishment. When officers arrived, the defendant

was still inside the check cashing location and he shredded the note into several pieces.

Defendant Mahmud was detained, and after law enforcement interviewed W-1 and obtained a positive identification of the defendant on the scene, Defendant Mahmud was placed under arrest and taken to the 3rd District, Washington, D.C., Metropolitan Police Department (MPD) for processing. At approximately 11:47 a.m., the defendant was advised of his *Miranda* rights by Detective Ryan Savoy. Defendant Mahmud then waived those rights in writing and was questioned by law enforcement. The defendant's waiver and statements were recorded on videotape. In substance, the defendant admitted to his commission of the criminal conduct, indicating he was under a lot of stress at that time. After the defendant's statement was complete, Detective Savoy walked the defendant downstairs to the cellblock and the defendant said, "Hey, what happened to that note?" He was not being questioned at that time. Later on that same date, July 26, 2018, the defendant was taken to the hospital where he received medical services.

Defendant Mahmud is charged by Indictment with one count of Interference with Interstate Commerce by Robbery, in violation of Title 18 U.S.C. § 1951.

**ARGUMENT**

### I. All Statements Obtained from the Defendant Should be Admissible Because They were Not Obtained in Violation of the Constitution

On October 15, 2018, Defendant Shiekh Mahmud, through counsel, filed a Motion to Suppress Statements. The defendant, in substance, contends that his statements were involuntary and likely obtained in violation of his *Miranda* (*Miranda v. Arizona*, 384 U.S. 436 (1966)) rights. Therefore, they should be suppressed. We disagree.

*Miranda v. Arizona*, 384 U.S. at 471-72, prescribed procedural safeguards for persons subjected to custodial interrogation. Any statements a suspect makes during custodial interrogation are admissible in the prosecution's case-in-chief unless prior *Miranda* warnings have

2

not been given.  *Id.* at 477-78; *see also United States v. Bogle*, 114 F.3d 1271, 1275 (D.C. Cir. 1997) (indicating that only questions that are reasonably likely to elicit incriminating information in the specific circumstances of the case can constitute "interrogation" within the protections of *Miranda*).  Additionally, *Miranda* warnings need not be given in any particular form, though their substance must be adequately communicated to the subject.[1]  *Duckworth v. Eagan*, 492 U.S. 195, 202 (1989); *California v. Prysock*, 453 U.S. 355, 359-60 (1981).

Furthermore, a statement is voluntary when it is the product of "an essentially free and unconstrained choice by its maker," and relevant to this determination is whether the person making the statement had his will overborne and his capacity for self-determination critically impaired.  *See Culombe v. Connecticut*, 367 U.S. 568, 602 (1961); *see also United States v. Reed*, 522 F.3d 354, 358-59 (D.C. Cir. 2008) (indicating that a confession is admissible if under the totality of the circumstances it was voluntarily obtained; also saying that although the defendant's mental condition can be a factor in the "'voluntariness' calculus," this fact does not justify a conclusion that the defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry); *United States v. Coutchavlis*, 260 F.3d 1149, 1158 (9th Cir. 2001) (noting that the test for voluntariness is whether, considering all the facts, the government used physical or psychological coercion or improper inducement so that the suspect's will was overborne).  *See generally Schneckloth v. Bustamonte*, 412 U.S. 218, 223-27 (1973). The government must establish the voluntariness of a suspect's statement by a preponderance of

---

[1] In *Miranda*, the Supreme Court ruled that for any incriminating statement made during custodial interrogation to be admissible, the prosecution must demonstrate that (1) the defendant was informed that he had the right to remain silent, anything he said could be used against him, he had a right to have an attorney present, and if he could not afford an attorney one would be appointed for him; and (2) the defendant waived these rights.  *Miranda*, 384 U.S. at 479.  In *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980), the Supreme Court held that the term "interrogation" under *Miranda* refers "not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."

the evidence, *see Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *Reed*, 522 F.3d at 359, and to determine voluntariness courts use a case-by-case analysis and look at the totality of the circumstances. *See North Carolina v. Butler*, 441 U.S. 369, 374-75 (1979); *United States v. McNeil*, 433 F.2d 1109, 1112 (D.C. Cir. 1969). In that regard, courts usually look at the presence or absence of physical coercion, the duration of questioning, the number and attitude of the interrogators, the mental sufficiency of the suspect, and the environment of the questioning.

Based upon the above-noted legal principles and facts and circumstances of the instant case, the statements of Defendant Mahmud were voluntary and not obtained in violation of his *Miranda* rights. First, the defendant was advised of his *Miranda* rights and he waived those rights in writing during the videotaped recording. Defendant Mahmud then made statements which the government characterizes as a confession to law enforcement officials.[2] During this interview, two agents were present, one of whom primarily asked almost all of the questions. The interview only lasted approximately 23 minutes in duration, and the defendant was not subjected to threats, or actual or suggested physical intimidation or abuse, during that time period. *See United States v. Yunis*, 859 F.2d 953, 961 (D.C. Cir. 1988) (finding that alien's seasickness, uncomfortably hot room, and unfamiliarity with American legal culture did not render his *Miranda* rights waiver involuntary or unknowing without evidence of intimidation, coercion, or deception); *compare Arizona v. Fulminante*, 499 U.S. 279, 286 (1991) (finding confession involuntary where the party confessed in the belief that his life was in jeopardy if he did not confess); *Spano v. New York*, 360 U.S. 315, 321-22 (1959) (finding confession involuntary where the party was questioned for eight

---

[2] The defendant admitted, among other things, that he went into the establishment to obtain money and that he was wrong to have committed the actions that he did. For purposes of defendant's statements to law enforcement at the precinct, the government will consent to use only those statements the defendant made during and after he waived his *Miranda* rights.

straight hours, did not narratively confess, but responded to leading statements and was questioned in the course of a "massive official interrogation"); *Fikes v. Alabama*, 352 U.S. 191, 196-97 (1957) (finding confession involuntary where an uneducated defendant of low mentality, if not mentally ill, was questioned over a five day period); *Malinski v. New York*, 324 U.S. 401, 407 (1945) (finding confession involuntary where party was led to believe that law enforcement personnel were about to physically beat him).  As such, given that Defendant Mahmud was 26 years-old and no stranger to the criminal justice system at the time he made his recorded statements in a police precinct, the defendant's statements should be admissible because they were voluntary and not obtained in violation of his *Miranda* rights.[3]

Furthermore, the defendant's additional statement which he made while being taken to the cellblock – that is, his statement, "Hey, what happened to that note?" – was obtained after the defendant had already been advised of and waived his *Miranda* rights.  That statement was also spontaneous, and not the subject of questioning by law enforcement.  *See United States v. Samuels*, 938 F.2d 210, 214 (D.C. Cir. 1991) (indicating that spontaneous statements are admissible without *Miranda* warning).  Therefore, the defendant's additional statement should also be admissible.

---

3  On April 23, 2014, Defendant Mahmud was convicted in Washington, D.C., of Conspiracy to Interfere with Interstate Commerce by Robbery in Case Number CR: 13-0292-02 (RC). On February 6, 2014, Defendant Mahmud admitted guilt or confessed in Court before Judge Rudolph Contreras of the United States District Court for the District of Columbia that he knowingly and intentionally committed the robbery offense of conviction.   As such, the defendant was no stranger to the criminal justice system.

WHEREFORE, the government respectfully requests that Defendant's Motion be DENIED.

        Respectfully submitted,

        JESSIE K. LIU
        United States Attorney
        D.C. Bar No. 472845

By:    **S/    Kenneth *F. Whitted***
        KENNETH F. WHITTED
        Assistant United States Attorney
        D.C. Bar No. 430346
        (202) 252-7722
        555 4th Street, N.W., Suite #4106
        Washington, D.C. 20530